Evan J. Smith (SBN 242352)
Ryan P. Cardona (SBN 302113)
BRODSKY SMITH
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel:    877.534.2590
Fax:    310.247.0160
Email: esmith@brodskysmith.com
        rcardona@brodskysmith.com

*Attorneys for Plaintiff*

STILESPOMEROY LLP
CHARLES H. POMEROY – State Bar No. 133132
  cpomeroy@stilespomeroy.com
MICHAEL J. STILES – State Bar No. 179214
  mstiles@stilespomeroy.com
301 E. Colorado Blvd., Suite 600
Pasadena, California  91101
Telephone:     (626) 243-5599
Facsimile:     (626) 389-0599

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GUZMAN,<br><br>           Plaintiff,<br><br>    vs.<br><br>MECHANICAL METAL FINISHING CO. dba MECHANICAL METAL FINISHING,<br><br>           Defendant, | **Civil Case No.: 2:22-cv-04030-AB-RAOx**<br><br>**[PROPOSED] CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Carlos Guzman ("Plaintiff") and Defendant Mechanical Metal Finishing Co. dba Mechanical Metal Finishing ("Mechanical Metal Finishing" or the "Defendant").  The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff is concerned with the environmental health of the Dominguez Channel, its inflows, outflows, including the San Pedro Bay, and the overall Dominguez Channel Watershed, of which the Dominguez Channel and the San Pedro Bay are a part, and uses and enjoys the waters of the Dominguez Channel, San Pedro Bay, their inflows, outflows and other waters of the Dominguez Channel Watershed;

**WHEREAS**, Mechanical Metal Finishing is the owner and operator of a facility that mechanically deburs all types of metal, located at 15220 S. Broadway St., Gardena, CA 90248, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff's use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No. 2014-0057-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, the Facility is listed as operating under SIC Code 3471, relating to Electroplating, Plating, Polishing, Anodizing, and Coloring.  Defendant has had coverage for the Facility under the California Industrial General Permit since at least 1992, under the issued WDID No. 4 19I027682, and the Facility is a member of the Metal Finishing Association of Southern California compliance group ("Compliance Group") for stormwater which, among other things, reduces the required annual sampling requirements to two times per year.  This "Notice of Intent" for the Facility requires the Defendant to comply with the terms of the Industrial Stormwater Permit and lists "Mechanical Metal Finishing" as the Operator and Facility names;

**WHEREAS**, on April 4, 2022, Plaintiff sent to Mechanical Metal Finishing, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board – Los Angeles Region ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b).  The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the Mechanical Metal Finishing Facility[1];

**WHEREAS**, on June 13, 2022, Plaintiff filed a complaint against Mechanical Metal Finishing in the United States District Court, Central District of California (Case No. 2:22-cv-04030-AB-RAOx), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Mechanical Metal Finishing Facility ("Complaint");

**WHEREAS**, Plaintiff alleges Mechanical Metal Finishing to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the Mechanical Metal Finishing Facility;

---

[1]  For purposes of this Consent Decree, the NPDES permit and any amendments thereto in effect at the time of Mechanical Metal Finishing's required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

**WHEREAS**, on December 2, 2022, Mechanical Metal Finishing filed an answer in response to the Complaint, denying all allegations in the Notice Letter and Complaint relating to the Mechanical Metal Finishing Facility ("Answer");

**WHEREAS**, on October 27, 2022, Plaintiff's expert environmental consultant conducted an inspection of the Facility;

**WHEREAS**, in order to carry out the terms more fully described below, Mechanical Metal Finishing has uploaded a revised Stormwater Pollution Prevention Plan ("SWPPP") to the Water Boards Storm Water Multiple Application & Report Tracking System ("SMARTS"). A subsequent revised SWPPP will be uploaded within one hundred-eighty (180) days of the Effective Date. This revised SWPPP will contain significant revisions designed to bring the Facility into further compliance with the IGP, in response to the allegations contained in Plaintiff's Notice Letter and the Complaint, and based upon the findings in the October 27, 2022 inspection of the Facility and subsequent discussion and agreement between the Parties and their respective consultants;

**WHEREAS**, Mechanical Metal Finishing continues to deny all allegations in the Notice Letter and Complaint relating to the Mechanical Metal Finishing Facility;

**WHEREAS**, Plaintiff and Mechanical Metal Finishing have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings; and

**WHEREAS**, all actions taken by Mechanical Metal Finishing pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**<u>NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES</u>**

**<u>AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:</u>**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

**2.** Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Mechanical Metal Finishing Facility is located within this District;

**3.** The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

**4.** Plaintiff has standing to bring this action;

**5.** The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

# I.  OBJECTIVES

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in his Complaint.  Specifically, Mechanical Metal Finishing agrees to comply with Receiving Water Limitation VI.A. in the IGP which requires that Mechanical Metal Finishing "shall ensure that industrial storm water discharges … do not cause or contribute to the exceedance of any applicable water quality standards in any affected receiving water,"; Effluent Limitation V.A. of the IGP which requires that Mechanical Metal Finishing "shall implement Best Management Practices ("BMPs") that comply with the BAT/BCT requirements of the [IGP] to reduce or prevent discharges of pollutants in [Mechanical Metal Finishing's] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability"; and the Monitoring, Sampling, and Analysis Requirements found in § XI of the IGP and Compliance Groups found in § XIV of the IGP which require that the Mechanical Metal Finishing "shall collect and analyze storm water samples from one (1) [Qualifying Storm Events ("QSEs")] within the first half of each reporting year (July 1 to December 31), and one (1) QSEs within the second half of each reporting year (January 1 to June 30)."  Mechanical Metal Finishing shall develop and implement BMPs necessary to

achieve compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the IGP.  Nothing herein shall be interpreted as an admission by Mechanical Metal Finishing that it has previously failed to comply with these or any other requirements of the CWA or the IGP.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

### A.   Agency Review and Comment

Plaintiff shall submit this Consent Decree and all other requisite materials to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of (i) the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5, or (ii) the reception of the requisite documents associated with the supplemental environmental project described below in Section V.A, whichever occurs later.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by either (i) written acknowledgement of receipt by the Department of Justice, or (ii) the certified return receipts, copies of which shall be provided to Mechanical Metal Finishing if requested.  In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

### B.   Effective Date

The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

### C.   Termination Date

This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), or at such time as Mechanical Metal Finishing ceases to have stormwater discharges subject to the IGP and Mechanical Metal Finishing:  1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to Plaintiff, unless

there is a prior ongoing, unresolved dispute regarding Mechanical Metal Finishing's compliance with this Consent Decree.

## III.   POLLUTION CONTROL REQUIREMENTS

### A.   Storm Water Pollution Reduction Measures

1.   The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage storm water discharges, through full compliance with the IGP.

2.   Commencing from the Effective Date through the termination date, to the extent not already completed, Mechanical Metal Finishing shall engage in the following activities to achieve compliance with the Permit and this Consent Decree:

(a)   Mechanical Metal Finishing will appoint a Qualified Industrial Storm Water Practitioner ("QISP") within sixty (60) days after the Effective Date; and

(b)   Certify and submit to Plaintiff, and the RWQCB via SMARTS the QISP's identification number, name, and contact information (telephone number, e-mail address).

3.   In addition to the activities described in Sections III.A.2.(a) above, Mechanical Metal Finishing will assure the incorporation of all terms contained in the revised SWPPP (more fully described in Section III.C below) shall be implemented at the Facility, the boundaries of which are outlined on the Mechanical Metal Finishing's Facility Site Map contained in the SWPPP ("Site Map").  The Parties agree that the SWPPP may be modified from time to time as more fully described in this Consent Decree.  In the event of a modification to the SWPPP or Facility Site Map during the term of this Consent Decree, Mechanical Metal Finishing will provide a copy of the revised exhibits to Plaintiff in the manner described herein, and to the RWQCB via SMARTs.

### B.   BMP Implementation/Revisions

Mechanical Metal Finishing shall cause the following additional BMPs and/or BMP revisions at the Facility to be carried out in the specified location within one hundred-eighty (180) days of the Effective Date:

**1.** Mechanical Metal Finishing will install a flow-based stormwater treatment system pursuant to IGP § X.H.6.b.i at the Facility capable of treating 0.2 inches of stormwater per hour over the square footage of the Facility. This system will include the following specific implementations at different areas of the Facility as follows:

**(a)** In the Locker Room area –

> **(i)** Installation of a Gullywasher filter and necessary plumbing changes to address routed stormwater discharges from the SW Roof section. This implementation will also include the installation of an additional shower pan for a secondary drain, and route stormwater through the currently existing bottom of the downspout;

**(b)** In the Lab Room area –

> **(i)** Installation of a Gullywasher filter and necessary plumbing changes to address routed stormwater discharges from the NW Roof section. This implementation will also include the installation of an additional shower pan for a secondary drain, and route stormwater through the currently existing bottom of the downspout;

**(c)** In the Yard Area –

> **(i)** Installation of two Gullywasher 275 BioUp filters and necessary plumbing changes, including NutrientControl media blankets utilizing chloride exchange media;
>
> **(ii)** Installation of 48"L x 48"W x 60"D catch basin with a cast iron grate and a sump pump to capture all yard stormwater to divert through installed Gullywasher filters; and
>
> **(iii)** Installation of an asphalt bump along the southern fence and gates of the Facility to prevent water from the yard flowing off the Facility property.

**(d)** On the SE Roof Section –

    **(i)** Rerouting of downspouts off of this area of the Facility roof to route stormwater to the Yard for treatment by the two (2), separate Gullywasher 275 BioUp Biofilters noted in (c), above.

**(e)** On the NE Roof Section –

    **(i)** Rerouting of downspouts off of this area of the Facility roof to route stormwater to the Yard for treatment by the two (2), separate Gullywasher 275 BioUp Biofilters noted in (c), above.

## C.   SWPPP Revisions/Amendments

Within one hundred-eighty (180) days after the Effective Date, Mechanical Metal Finishing shall revise the current SWPPP for the Mechanical Metal Finishing Facility to include the following:

**1.** In conjunction with Section III.B.1 above, Mechanical Metal Finishing will update its SWPPP to include the BMP changes and implementations carried out at the Facility.

**2.** Throughout the term of this Consent Decree, Mechanical Metal Finishing shall notify Plaintiff of any SWPPP revisions made pursuant to the requirements of Section III.A.3 and intended to be uploaded to SMARTS, for Plaintiff to review and comment. Such notice may be automatically provided to Plaintiff's counsel should they be listed as a data-entry person for this file on SMARTS for the life of this Consent Decree. If this listing takes place, no separate notice shall be required for any SWPPP revisions. Plaintiff will provide comments, if any, to Mechanical Metal Finishing within thirty (30) days of receipt of such notice. Mechanical Metal Finishing shall incorporate Plaintiff's comments into the SWPPP or shall justify in writing why any comment should not be incorporated, within fifteen (15) days of receiving comments. The final agreed upon SWPPP revisions shall then be uploaded to SMARTS.

**D.      Numeric Action Levels ("NALs") for Discharges from the Mechanical Metal Finishing Facility**

Mechanical Metal Finishing acknowledges that Numeric Action Levels ("NALs") in the IGP are applicable to the Facility, including instantaneous and/or annual NALs for the required parameters associated with SIC code 3471 including (i) pH; (ii) Oil and Grease; (iii) Total Suspended Solids; (iv) Zinc; (v) Iron; (vi) Aluminum; and (vii) Nitrate plus Nitrite Nitrogen, and that Mechanical Metal Finishing will continue to act in conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time.

**1.      Exceedance Response Actions (ERAs)**

**a**.      Mechanical Metal Finishing acknowledges that it is required to comply with the Exceedance Response Action requirements of the permit as stated in IGP § XII.

**E.      Sampling and Analysis**

**1.**      Mechanical Metal Finishing has installed a recording rain gauge capable of recording rainfall to 0.1 inches at the Mechanical Metal Finishing Facility.  Mechanical Metal Finishing shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data in Mechanical Metal Finishing's Monitoring Report described in Part F below for the term of this Consent Decree.  In the event there is a dispute about the quantity of rainfall at the Facility, the rain gauge installed pursuant to this section shall be deemed to be the actual rainfall at the Facility.

**2.**      Within forty-five (45) days of the Effective Date, Mechanical Metal Finishing shall review its Monitoring and Reporting Plan for all storm water discharges from the Mechanical Metal Finishing Facility to determine if its current plan meets the requirements of this Consent Decree and IGP § XI.  Should Mechanical Metal Finishing determine any revisions to its Monitoring and Reporting Plan are necessary, it shall follow the procedures set forth in Section III.E.3 below for incorporation into the Facility's SWPPP.

**3.** Mechanical Metal Finishing shall submit any revisions to its Monitoring and Reporting Plan for the Mechanical Metal Finishing Facility to Plaintiff for review and comment. Plaintiff shall provide comments, if any, to Mechanical Metal Finishing within thirty (30) days of receipt of the Monitoring Plan. Mechanical Metal Finishing shall incorporate Plaintiff's comments into the Monitoring Plan, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments.

**4.** During the life of this Consent Decree, and as set forth in the IGP, Mechanical Metal Finishing shall collect samples of any Qualifying Storm Event ("QSE"), as defined in the IGP, from at least one QSEs during each half of each reporting year from each sampling point at the Mechanical Metal Finishing Facility in conformity with its "Monitoring and Reporting Plan" as modified by Mechanical Metal Finishing's participation in the Compliance Group, in compliance with the IGP. However, nothing herein shall require Mechanical Metal Finishing to conduct sampling in reporting year halves when a QSE, as defined by the IGP, does not occur. Furthermore, nothing herein shall require Mechanical Metal Finishing to conduct sampling in reporting year halves when no discharge resulting from a QSE occurs or to perform any activities relating to sampling QSEs beyond those required by the IGP and as permitted.

**5.** Mechanical Metal Finishing shall comply with the analytical methods as required by IGP § XI.B.

**6.** Mechanical Metal Finishing shall request that results of all sample analyses required by this Consent Decree be reported to it within thirty (30) days of laboratory receipt of the sample.

**7.** During the term of the Consent Decree, Mechanical Metal Finishing will give notice to Plaintiff of the filing of any reports or other documents containing the complete laboratory results of samples collected as required by this Consent Decree concurrently with the posting of the same on SMARTS.

**F.     Visual Observations**

During the life of this Consent Decree, Mechanical Metal Finishing shall conduct and document visual observations pursuant to IGP § XI.A and as more fully described in the Mechanical Metal Finishing SWPPP.

**G.     Annual Report**

Mechanical Metal Finishing shall give notice, pursuant to Section VIII.E. hereof (to the extent notice is not automatically provided to Plaintiff's counsel on SMARTS), to Plaintiff when Mechanical Metal Finishing submits an Annual Report ("Annual Report") to the State Board no later than July 15 of each year during the term of this Consent Decree.  The Annual Report shall contain all information required by the IGP and/or the SWPPP.

**IV.    <u>MONITORING AND REPORTING</u>**

**A.     Facility Inspections.**

**1.**     Once during the life of this Consent Decree, Plaintiff may conduct an inspection of the Facility up to forty-five (45) days before the Termination Date.  Up to three (3) of Plaintiff's representatives may attend the Facility inspection.  The Facility inspection shall occur during normal business hours.  Plaintiff and Mechanical Metal Finishing shall work in good faith to select a mutually acceptable date for the inspection, which will be scheduled at least ten (10) business days in advance.  Mechanical Metal Finishing's personnel or contractors may accompany Plaintiff's representative(s) throughout the inspection.

**2.**     Plaintiff shall provide Mechanical Metal Finishing with any comments regarding the Facility inspection within seventy-two (72) hours of the completion thereof.  Said comments shall be prepared, signed and certified by Plaintiff's designated QISP.  Mechanical Metal Finishing shall respond to Plaintiff's comments within thirty (30) days of the date on which they are received; however, Mechanical Metal Finishing is not obligated to respond to any comments regarding the Facility inspection received after seventy-two (72) hours has passed.

**B.    Compliance Monitoring and Oversight**

Mechanical Metal Finishing shall make a one-time payment of Seven Thousand Five Hundred Dollars ($7,500.00) to compensate Plaintiff's Counsel for costs and fees to be incurred for monitoring Mechanical Metal Finishing's compliance with this Consent Decree.  Payment shall be made within fourteen (14) business days of the Effective Date payable to "Brodsky & Smith, LLC" via U.S. Mail.

**C.    Mechanical Metal Finishing Document Provision**

During the life of this Consent Decree, within ten (10) days, Mechanical Metal Finishing shall give notice to Plaintiff of all documents related to storm water quality at the Mechanical Metal Finishing Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality.  Any correspondence related to Mechanical Metal Finishing's compliance with the Permit or storm water quality received by Mechanical Metal Finishing from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten (10) days of receipt by Mechanical Metal Finishing; provided, however, that this Consent Decree shall not require Mechanical Metal Finishing to disclose any information or documents subject to the Attorney-Client Privilege or the Attorney Work Product doctrine.

**V.  ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS**

**A.    Environmental Project**

To remediate the alleged environmental harms resulting from non-compliance with the 1997 Storm Water Permit and IGP alleged in the Complaint, Mechanical Metal Finishing agrees to make a payment of Two Thousand Five Hundred Dollars ($2,500.00) to the "Council for Watershed Health" and mailed to The Council for Watershed Health attention Eileen Alduenda, Executive Director, 177 E. Colorado Blvd., Ste. 200, Pasadena, CA 91105. The payment shall be made within fourteen (14) business days of the Effective Date.

**B.    Reimbursement of Attorneys' Fees and Costs**

Mechanical Metal Finishing shall pay a total of Forty Thousand Dollars ($40,000.000) to

"Brodsky Smith" for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made in eight payments, of Five Thousand Dollars ($5,000.00) and shall be made payable to "Brodsky & Smith, LLC".   All eight (8) payments shall take the form of post-dated checks which shall be delivered to Plaintiff's Counsel within fourteen (14) days of the Effective Date via U.S. Mail or any other overnight courier service.  The first payment amount shall be eligible to be cashed by Plaintiff's Counsel on the first day of the month following the month of the Effective Date.  The remaining payments shall be eligible to be cashed by Plaintiff's Counsel on the first day of the month in consecutive subsequent months.  Plaintiff's Counsel agrees to not cash any Payment until eligible under the terms of this Consent Decree.

## VI.    DISPUTE RESOLUTION AND RETENTION OF JURISDICTION

### A.    Continuing Jurisdiction

This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the Court to retain jurisdiction.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

### B.    Meet and Confer

A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute.  The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice.  The Parties may elect to extend this time in an effort to resolve the dispute without Court intervention.

## C.     Dispute Resolution

If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, then the Parties shall request a settlement meeting before the Magistrate Judge assigned to this action.  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.

## D.     Burden of Proof

In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

## E.     Enforcement Fees and Costs

In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Federal Rule of Civil Procedure Rule 11, applicable case law interpreting such provisions, and/or as provided by statutory law and/or case law.

## VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

## A.     Plaintiff's Public Release of Claims

This Consent Decree is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and Mechanical Metal Finishing, and their parents, subsidiaries, affiliated entities under common ownership, directors, officers, agents, employees, attorneys, successors and assigns, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any violation of the CWA that was alleged in the Complaint, or that could have been brought pursuant to the Notice.  Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

**B.     Plaintiff's Release of Additional Claims**

As to Plaintiff for and in his individual capacity only, this Consent Decree shall have preclusive effect such that he shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by him against Mechanical Metal Finishing or the Releasees based on the facts alleged, or that could have been alleged, in the Complaint and the Notice, whether or not based on actions committed by Mechanical Metal Finishing.

**C.     Waiver of Rights Under Section 1542 of the California Civil Code**

**1.** Plaintiff acting in his individual capacity waives all rights to institute any form of legal action, and releases all claims against Mechanical Metal Finishing, and the Releasees, (referred to collectively in this Section as the "Claims").  In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of the provisions of California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**2.** Plaintiff understands and acknowledges that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint, Plaintiff will not be able to make any claim for those damages against Releasees.

**D.     Mechanical Metal Finishing's Release of Plaintiff**

Mechanical Metal Finishing, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, his attorneys,

and other representatives for any and all actions taken or statements made (or those that could have been taken or made) by Plaintiff and his attorney and other representatives, whether in the course of investigating the Claims or otherwise.

**E.      Parties' Release**

Unless specifically provided for in this Consent Decree, the Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any additional attorneys' fees or expenses related to the resolution of this matter.

**F.      Parties' Rights In Other Potential Proceedings**

Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Mechanical Metal Finishing's compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

**VIII.   <u>MISCELLANEOUS PROVISIONS</u>**

**A.      No Admission of Liability**

Neither this Consent Decree, the implementation of additional or modified BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Mechanical Metal Finishing maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

**B.    Construction**

The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein.

**C.    Choice of Law and Venue**

The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

**D.    Severability**

In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**E.    Correspondence and Notices**

Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

**1.**    First-class (registered or certified) mail return receipt requested; or

**2.**    Overnight or two-day courier; or

**3.**    By email with confirmed receipt only (thus at the risk of the email sender); on any Party by the other Party to the following addresses:

**If to Plaintiff:**

Evan J. Smith (SBN 242352)
Ryan P. Cardona (SBN 302113)
Brodsky Smith
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel:    877.534.2590
Fax:    310.247.0160
Email: esmith@brodskysmith.com
           rcardona@brodskysmith.com

**If to Mechanical Metal Finishing:**

STILESPOMEROY LLP
CHARLES H. POMEROY – State Bar No. 133132
cpomeroy@stilespomeroy.com

MICHAEL J. STILES – State Bar No. 179214
mstiles@stilespomeroy.com
301 E. Colorado Blvd., Suite 600
Pasadena, California  91101
Telephone:      (626) 243-5599
Facsimile:      (626) 389-0599

Any change of address or addresses shall be communicated in the manner described above for giving notices.

**F.     Counterparts**

This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**G.     Modification of the Consent Decree**

Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Decree by the Court.  If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days before taking any step to implement the proposed change.

**H.     Full Settlement**

This Consent Decree contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto.  No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto.  No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**I.      Integration Clause**

This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**J.      Authority of Counsel**

The undersigned representatives for Plaintiff and Mechanical Metal Finishing each certify that he/she is fully authorized by the party whom he/she represents to approve this Consent Decree as to form.

**K.      Authority**

Mechanical Metal Finishing certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of Mechanical Metal Finishing, and to legally bind Mechanical Metal Finishing to its terms.

**L.      Agreement to be Bound**

The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**M.      Rights of the United States**

Nothing in this Consent Decree contemplates an attempt to or has the effect of waiving the rights of the United States to enforce its rights under Federal Law.

**IX. <u>COURT APPROVAL</u>**

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree.  Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice which are at issue in this action.  If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: _____          **Plaintiff Carlos Guzman**

                                  _____
                                  Carlos Guzman

Dated: 04/27/2023                 **Defendant Mechanical Metal Finishing Co. dba Mechanical Metal Finishing**

                                  By: _____
                                  Name: Olga Naman
                                  Title: President

**APPROVED AS TO FORM**

Dated: _____          **BRODSKY SMITH**

                                  By: _____
                                      Evan J. Smith (SBN 242352)
                                      Ryan P. Cardona (SBN 302113)

                                  *Attorneys for Plaintiff*

Dated: April 27, 2023             **STILES POMEROY LLP**

                                  By: _____
                                      Charles H. Pomeroy (SBN 133132)
                                      Michael J. Stiles (SBN 179214)

                                  *Attorneys for Defendant*

**IT IS SO ORDERED.**

Date: July 18, 2023               _____
                                  The Honorable André Birotte Jr.
                                  United States District Court Judge
                                  Central District of California

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: 04/29/2023 _____

**Plaintiff Carlos Guzman**

_____
Carlos Guzman

Dated: _____

**Defendant Mechanical Metal Finishing Co. dba Mechanical Metal Finishing**

By:_____
Name:
Title:

**APPROVED AS TO FORM**

Dated: 05/01/2023 _____

**BRODSKY SMITH**

By: *Ryan P. Cardona*
Evan J. Smith (SBN 242352)
Ryan P. Cardona (SBN 302113)

*Attorneys for Plaintiff*

Dated: _____

**STILES POMEROY LLP**

By:_____
Charles H. Pomeroy (SBN 133132)
Michael J. Stiles (SBN 179214)

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Date: _____

_____
The Honorable André Birotte Jr.
United States District Court Judge
Central District of California



15 May 2023

Via Email:
Hunter.J.Kendrick@usdoj.gov

US Department of Justice
Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-07415

RE: Carlos Guzman vs. Mechanical Metal Finishing Co.  Civil Case No 2:22-CV-04030-AB-RAOx

Dear Mr. Kendrick:

The Council for Watershed Health (CWH) has read the proposed consent judgment, and understands that as a result of the entry of the proposed consent decree by the Court, CWH shall receive funds in the amount of Two Thousand Dollars Five Hundred ($2,500.00) to be applied to the Compton Creek Clean Up Project. CWH will spend any monies it receives under the consent

judgment for the purposes specified in the consent judgment. CWH is recognized as an exempt entity under section 501 (c)(3) of the US Internal Revenue Code. CWH will not use any money it receives under the consent judgment for lobbying purposes (see, e.g., Internal Revenue Service definition of lobbying, 26 C.F.R. § 56.4911-2). CWH will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.

Attached is a description of the Compton Creek Clean Up Project and how the funds will be spent.

If any additional information is needed, please contact me via email at eileen@watershedhealth.org.

Sincerely,

Eileen Alduenda
Executive Director

cc:
Evan J. Smith – esmith@brodskysmith.com
Ryan P. Cardona – rcardona@brodskysmith.com
Charles H. Pomeroy – cpomeroy@stilespomeroy.com
Michael J. Stiles – mstiles@stilespoemeroy.com



The Council for Watershed Health (CWH) is a 501(c)(3) non-profit organization. Our mission is to advance the health and sustainability of our region's watersheds, rivers and habitats - both in natural areas and urban neighborhoods. We do this through science-based research, education and inclusive stakeholder engagement.

**Compton Creek Clean Up**

The Compton Creek Clean Up project will address neighborhood blight, water quality pollutants, and public health. Compton Creek is a highly urbanized stream with only a small soft-bottom section remaining near the Los Angeles River confluence. The community surrounding Compton Creek has a low number of recreational parks; is adjacent to major corridors of industrial manufacturing facilities; and scores 81-100% according to CalEnviroScreen 3.0 Results from the June 2018 update. The beneficial uses of Compton Creek are degraded, and the creek itself is listed on California's 303(d) list of impaired waterbodies for the following constituents: elevated pH, lead, trash, copper, fecal indicator bacteria, and zinc. Due to the environmental problems created by illegal dumping and discharges in the area and poor management, Compton Creek has become a public health and safety issue for the surrounding community. More frequent trash-clean-ups and monitoring are necessary to reduce the amount of trash that drains into the Los Angeles River.

Council for Watershed Health will host one community trash clean-up of the Compton Creek in partnership with Community RePower Movement, a community-based organization partner working in the Compton Creek area. The project outcomes will help to understand how a community-driven process can be used to reduce trash in the Creek and reach TMDL targets. Additionally, this Project will increase residents' awareness of Compton Creek and the impact of trash pollution on their health and the health of the watershed; reconnect residents to Compton Creek; and enhance community pride in relation to the Creek. The knowledge generated through this clean-up will also be invaluable to elevating the health of Compton Creek into the awareness of relevant decision-makers such as the State and regional water board, elected officials, agencies, public health officials, etc. CWH will use this SEP disbursement to support project management of the Clean-Up.